221 P.3d 735 (2009)
2009 OK CR 29
K.M.C., Appellant
v.
STATE of Oklahoma, Appellee.
No. J-2009-258.
Court of Criminal Appeals of Oklahoma.
October 29, 2009.
*736 David Phillips, Richard Couch, Assistant Public Defender, Tulsa, OK, for appellant on appeal.
Scott Gengras, Erik M. Grayless, Assistant District Attorney, Tulsa, OK, for the State at trial.

OPINION
CHAPEL, Judge.
¶ 1 The Appellant, K.M.C., appeals to this Court from an order entered by the Honorable William C. Kellough, District Judge, granting the State's motion to sentence Appellant as an adult in Case No. CF-2008-4793 in the District Court of Tulsa County. On September 29, 2008, Appellant was charged by Information as a Youthful Offender with the offenses of Count 1: Assault and Battery With a Deadly Weapon; Count 2: Attempted Robbery With a Firearm; and Count 3: BurglaryFirst Degree. The crimes allegedly occurred on or about September 23, 2008, when Appellant was seventeen years, two months old.
¶ 2 After Appellant was bound over for trial at preliminary hearing, the State filed a motion to sentence Appellant as an adult, pursuant to 10A O.S.Supp.2009, § 2-5-208.[1] The hearing on the motion to sentence Appellant as an adult was held before Judge Kellough on February 27, March 6, and March 9, 2009. The only witness called at the hearing was the Office of Juvenile Affairs ("OJA") employee who prepared the Youthful Offender Study on Appellant. The OJA employee addressed the facts of this case with regard to the statutory factors to be considered in determining a motion to sentence a youthful offender as an adult. 10A O.S.Supp.2009, § 2-5-208(C)(2). The OJA employee opined that Appellant should be sentenced as an adult. (Tr. 21). The basis for that opinion was because Appellant did not have enough time before he would be turning eighteen years and five months. Id. The Youthful Offender Study filed in this case states that "OJA believes that this youth may be amenable to treatment but due to the defendant turning 18 years-old in July of this year, he will not have time to complete any treatment program that would be appropriate through the Office of Juvenile Affairs." (O.R. 75).
¶ 3 At the conclusion of the evidence and arguments, Judge Kellough stated "it'll be very clear to the Court of Criminal Appeals that, in essence, my finding is based on the time constraint, and recognizing it." (Tr. 44). Judge Kellough's written order states that the prospects for adequate protection of the public are limited because of Appellant's age (17 years and 7 months) and the fact he would be released from OJA supervision at 18 years, 5 months. (O.R. 96). The written order further states Appellant may be amenable to treatment, but is not likely to successfully complete a plan of rehabilitation as a youthful offender based on his age and the time limitation imposed by his release from OJA supervision at age 18 years and 5 months, pursuant to 10A O.S.Supp.2009, § 2-5-209(B)(1)(a).[2]Id. Judge Kellough granted the State's motion to sentence Appellant as an adult. Appellant brings this appeal.
¶ 4 On appeal Appellant raises the following propositions of error:
1. It was an abuse of discretion in light of the purposes of the Youthful Offender Act for the District Court to grant the State's motion to sentence Appellant as an adult.
2. 10 O.S.Supp.2008, § 7306-2.9(b) denies Appellant, who was 17 years of age at the time of the alleged crime, the equal protection of the law because it creates a subclass (17 year olds) within the youthful offender class (15, 16, and 17 year olds) whom the law affects differently than youthful offenders 15 and 16 years of age. Due to time constraints imposed by the law, 17 year-old youthful offenders are in effect denied youthful offender sentencing and thus *737 status. This classification is wholly irrelevant to the purpose of the Youthful Offender Act and to the intent of the Legislature in creating the Youthful Offender Act.
¶ 5 Pursuant to Rule 11.2, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2009), this appeal was automatically assigned to the Accelerated Docket of this Court. The propositions were presented to this Court in oral argument on June 25, 2009, pursuant to Rule 11.2(E). At the conclusion of oral argument, this Court voted three to two to reverse the District Court's order granting the State's motion to sentence Appellant as an adult, and to remand the matter to the District Court for further proceedings in the youthful offender system. This Court issued a written order reflecting the decision and allowing District Court proceedings to resume, with a notation that this published decision would follow. K.M.C. v. State, No. J-2009-258 (Okl.Cr. June 30, 2009) (not for publication).
¶ 6 When deciding a motion to sentence a youthful offender as an adult, the District Court shall certify the youthful offender as eligible for the imposition of an adult sentence only if it finds by clear and convincing evidence that there is good cause to believe that the accused person would not reasonably complete a plan of rehabilitation or that the public would not be adequately protected if the person were to be sentenced as a youthful offender. 10A O.S.Supp.2009, § 2-5-208(D). It is the purpose of the Youthful Offender Act to better ensure the public safety by holding youths accountable for the commission of serious crimes, while affording courts methods of rehabilitation for those youths the courts determine, at their discretion, may be amenable to such methods. 10A O.S.Supp.2009, § 2-5-202(B).[3] Effective November 1, 2006, the Oklahoma Legislature added Section 7306-2.7a to the Youthful Offender Act, which specifically provided:
"It is the intent of the Legislature to fully utilize the Youthful Offender Act as a means to protect the public while rehabilitating and holding youth accountable for serious crimes. The Legislature finds that eligible seventeen-year-olds should have the opportunity to be processed as youthful offenders as provided by law and held accountable through the various provisions of the Youthful Offender Act for custody, institutional placement, supervision, extended jurisdiction within the Office of Juvenile Affairs, and the ability to transfer youthful offenders to the Department of Corrections when incarceration or additional supervision is required beyond the maximum age allowed in the Office of Juvenile Affairs. No older youth should be deemed ineligible or denied consideration as a youthful offender who is otherwise lawfully eligible based upon the age of the youth being seventeen (17) years. To deny access to an otherwise eligible older youth without cause is to circumvent the original intent of the Legislature in creating the Youthful Offender Act."
10A O.S.Supp.2009, § 2-5-207.[4]
¶ 7 Based upon the above-cited statutes, this Court will not affirm orders granting motions to sentence youthful offenders as adults when the primary evidence and the only reasoning used to support the order is the age of the youthful offender. At the hearing on the motion to sentence Appellant as an adult, an OJA employee recommended that Appellant be sentenced as an adult. (Tr.21). The basis for that opinion was primarily the time frames and the conclusion Appellant doesn't have enough time to reasonably complete a plan of rehabilitation because of his age and the eighteen year and five month cutoff. Id. The Youthful Offender Study filed in this case states that "OJA believes that this youth may be amenable to treatment but due to the defendant turning 18 years-old in July of this year, he will not have time to complete any treatment program that would be appropriate through the Office of Juvenile Affairs." (O.R. 75).
¶ 8 In granting the State's motion to sentence Appellant as an adult in this case, Judge Kellough stated "it'll be very clear to the Court of Criminal Appeals that, in essence, *738 my finding is based on the time constraint, and recognizing it." (Tr. 44). Judge Kellough's written order states that the prospects for adequate protection of the public are limited because of Appellant's age (17 years and 7 months) and the fact he would be released from OJA supervision at 18 years, 5 months. (O.R. 96). The written order further states Appellant may be amenable to treatment, but is not likely to successfully complete a plan of rehabilitation as a youthful offender based on his age and the time limitation imposed by his release from OJA supervision at age 18 years and 5 months, pursuant to 10A O.S.Supp.2009, § 2-5-209(B)(1)(a). Id. Based upon this evidence, we find Appellant cannot be deemed ineligible or denied consideration as a youthful offender based upon his age being seventeen (17) years. 10A O.S.Supp.2009, § 2-5-207. We find that to deny Appellant access to youthful offender treatment would be to circumvent the original intent of the Legislature in creating the Youthful Offender Act. Id.
¶ 9 We find further statutory support for finding that age cannot be the reasoning used to sentence a youthful offender as an adult. The crimes for which a juvenile is charged as a youthful offender are all serious in nature. 10A O.S.Supp.2009, §§ 2-5-202(A), 2-5-205(A), and 2-5-206(A), (B). Any juvenile committing such a serious crime would require treatment for an extended period of time[5] in order to complete a plan of rehabilitation and to adequately protect the public. If youthful offenders were denied such extended treatment solely because it couldn't be completed by the time they turned eighteen years and five months old, it would effectively eliminate from treatment consideration most of the juveniles charged as youthful offenders and would basically render the Youthful Offender Act useless. This Court will not presume the Legislature to have done a vain thing. State v. District Court of Oklahoma County, 2007 OK CR 3, ¶ 17, 154 P.3d 84, 87.

DECISION
¶ 10 The order of the District Court of Tulsa County granting the State's motion to sentence Appellant as an adult in Case No. CF-2008-4793 is REVERSED and this case is REMANDED for further proceedings in the youthful offender system. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2009), the MANDATE is ORDERED issued upon the delivery and filing of this decision.
C. JOHNSON, P.J. concurs.
A. JOHNSON, V.P.J., and LUMPKIN, J., dissents.
LEWIS, J. specially concurs.
A. JOHNSON, Vice Presiding Judge, Dissenting.
¶ 1 The Oklahoma Legislature enacted the Youthful Offender Act in 1994 and incorporated it into the Oklahoma Statutes at 10 O.S. §§ 7306-2.1 to 3.1.[1] As recently as 2008, section 7306-2.10(G) of the Act permitted a trial court judge to sentence a juvenile as a youthful offender and commit him or her to serve a sentence in the custody of the Office of Juvenile Affairs until the offender reached age 21.[2] In 2008, the Legislature amended the Youthful Offender Act by eliminating section 7306-2.10(G) and its 21 year age provision.[3] At the same time it repealed *739 section 7306-2.10(G), the Legislature amended section 7306-2.9[4] to provide that a youthful offender could be placed in the custody of the Office of Juvenile Affairs only until he or she attains the age of 18 years five months. It is this statutory provision, section 7306-2.9, and its 18 year five month age limit, that is at issue here.[5]
¶ 2 Title 10 O.S.Supp.2008, § 7306-2.9 now provides:
If an individual sentenced as a youthful offender attains eighteen (18) years of age prior to the expiration of the sentence, such individual shall be returned to the sentencing court. At that time, the sentencing court shall make one of the following determinations:
a. whether the youthful offender shall be returned to the Office of Juvenile Affairs to complete a treatment program provided that the treatment program shall not exceed the youthful offender's attainment of eighteen (18) years of age and five (5) months.

b. whether the youthful offender shall be placed in the custody of the Department of Corrections,
c. whether the youthful offender shall be placed on probation with the Department of Corrections, or
d. whether the youthful offender shall be discharged from custody.
(Emphasis added). There is no ambiguity in this statute; its text is clear. There is no room for judicial interpretation or construction. The Legislature has directed that an individual sentenced as a youthful offender and placed with the Office of Juvenile Affairs may not remain in the custody of the Office of Juvenile Affairs beyond the age of 18 years and five months. According to the plain language of this provision, when a youthful offender reaches the age of 18 years and five months, a trial court must: (1) transfer the offender to the Department of Corrections to serve the remainder of his or her sentence; or (2) place the offender on probation with the Department of Corrections; or (3) discharge the offender from custody.
¶ 3 In this instance, K.M.C. committed the charged offenses at the age of 17 years and two months. At the time the trial court granted the State's motion to try and sentence K.M.C. as an adult, K.M.C. was 17 years and five months old. At the hearing on the State's motion, the Office of Juvenile Affairs reported to the trial judge that K.M.C.'s rehabilitation program would require 18 months of in-custody treatment and 6 to 9 months of aftercare. Finding, in essence, that K.M.C. could not complete an 18 to 27 month treatment program in the nine months remaining until he attained the age of 18 years and five months, and considering the consequent effect on public safety, the trial judge refused to treat K.M.C. as a youthful offender and determined that he would be tried as an adult. There was no abuse of discretion here. The judge's discretion was clearly cabined by an unambiguous legislative directive and no other result was possible.
¶ 4 In remanding the case to the district court with direction to treat K.M.C. as a youthful offender, however, this Court effectively *740 directs the district court to issue an order requiring the Office of Juvenile Affairs to retain custody of K.M.C. andif he be convictedkeep him in a treatment program for at least 1 ½ years beyond the 18 year five month age limit established by clear direction of the Legislature. By directing the district court to ignore the 18 year five month age limit, the majority rewrites section 7306-2.9 by striking its age limit and does so without any clear finding that the age limit is unconstitutional on its face or unconstitutional as applied to K.M.C. individually. Nor does the majority find that the age limit is in direct and irreconcilable conflict with any other statutory provision,[6] or that its application constitutes a miscarriage of justice. In the absence of any such findings, this decision to reverse the Judgment of the trial court is not only wrong as a matter of law, but it also exceeds this Court's statutory mandate.[7] I respectfully dissent.
LUMPKIN, Judge: Dissents.
¶ 1 I must respectfully dissent to the decision and analysis by the majority in this case. Regretfully, the majority disregards the rules of statutory construction in order to achieve a desired result. I can understand the frustration the members of the majority have with the evolution of the Youthful Offender Act and the failure of the Act to live up to its original aspirations. However, those frustrations should not control over the dictates of the Rule of Law established by our case law on how statutes are to be interpreted.
¶ 2 There is no constitutional right to be treated as a Youthful Offender. In fact, it is within the prerogative of the Legislature to do away with the Act and declare every person sixteen (16) years of age or older will be treated as an adult. Granted, from its inception the Act started out striving to meet well intentioned goals as set forth in 10 O.S. 2001, § 7306-2.2(B)[1]:
It is the purpose of the Youthful Offender Act to better ensure the public safety by holding youths accountable for the commission of serious crimes, while affording courts methods of rehabilitation for those youths the courts determine, at their discretion, may be amenable to such methods. It is the further purpose of the Youthful Offender Act to allow those youthful offenders whom the courts find to be amenable *741 to rehabilitation by the methods prescribed in the Youthful Offender Act to be placed in the custody or under the supervision of the Office of Juvenile Affairs for the purpose of accessing the rehabilitative programs provided by that Office....
¶ 3 However grand the original goals were, they have been further refined through the legislative process and as with most legislation that refinement is based on what funds are available. In 2006 the Legislature amended 10 O.S.Supp.2006, § 7306-2.7a to reflect:
It is the intent of the Legislature to fully utilize the Youthful Offender Act as a means to protect the public while rehabilitating and holding youth accountable for serious crimes.
...
No older youth should be deemed ineligible or denied consideration as a youthful offender who is otherwise lawfully eligible based on the youth's age being seventeen (17) years. To deny access to an otherwise eligible older youth without cause is to circumvent the original intent of the Legislature in creating the Youthful Offender Act.
¶ 4 If the Legislature had stopped with this provision then I could find some agreement with the result reached by the majority. However, in 2008 the Legislature further refined its legislative intent on this issue by amending 10 O.S.Supp.2008, § 7306-2.9(B)(1)(a) and (B)(3) to mandate that once a youthful offender reaches the age of eighteen (18) years five (5) months they are no longer eligible for services by the Office of Juvenile Affairs and are to be sentenced or discharged in accordance with the statutory options.
¶ 5 If applied correctly the rules of statutory construction answer the question presented and preclude the result reached by the majority in this case. The first basic rule is that specific statutes control over general statutes. State v. Hall, 2008 OK CR 15, ¶ 29, 185 P.3d 397, 404; King v. State, 2008 OK CR 13, ¶ 7, 182 P.3d 842, 844; Lozoya v. State, 1996 OK CR 55, ¶¶ 17-18, 932 P.2d 22, 28-29. While the general aspirations of the purpose set out in the Youthful Offender Act are commendable, those aspirations cannot control over specific provisions of the Act.
¶ 6 The next general principle is that the statute passed later in time controls over an earlier statute and the doctrine of repeal by implication must be considered. See Taylor v. State, 1982 OK CR 8, ¶ 5, 640 P.2d 554, 556 ("a statute may be repealed by implication only if there are irreconcilable conflicts between the statutes; where such a conflict exists, the latter statute modifies the earlier"); Bynum v. State, 1971 OK CR 389, ¶ 6, 490 P.2d 531, 533 ("most recent enactment of the Legislature controls and where inconsistent, the recent enactment repeals the conflicting portion of a prior enactment").
¶ 7 I submit the last legislative statement of the scope of the application of the Youthful Offender Act must control in this case. That last statement is that Youthful Offenders who reach the age of 18 years, 5 months, must be sentenced under the Act or discharged as they no longer qualify for services through the Office of Juvenile Affairs. The judge in this case was presented with a Youthful Offender who on the date of the adult sentencing hearing was 17 years, 8 months old and would require a minimal 20 months treatment to have any potential for rehabilitation but the law mandates that he be sentenced or discharged upon attaining the age of 18 years, 5 months. It cannot be an abuse of discretion for a judge to fail to do a vain act. Whether we like it or not, or agree with it, the Legislature has passed a valid state statute that controls the treatment for Youthful Offenders. Does it seem inconsistent? Yes it does, but facts change and the Legislature must react to those changing facts.
¶ 8 The road to destruction is paved with good intentions. Just as the lofty aspirations expressed in the Legislative purpose to the Youthful Offender Act are commendatory, subsequent Legislatures must deal with what actual funds are available to fund all programs for the State. That is their job. I submit that is what has happened in this case as it has been from the inception of the Youthful Offender Act. The provisions of the *742 Act have never been fully funded and anticipated programs have not come into being.
¶ 9 What should have happened when the Legislature set the limit of 18 years, 5 months, for services under the Youthful Offender Act, was the Legislature should have updated the purpose language and the provisions of § 7306-2.7a. However, as we often find in statutory enactments, collateral provisions are often not reconciled when new legislation is passed. It is for that reason that the rules of statutory construction have been developed to perform that reconciliation. The 18 year, 5 month, limitation language of § 7306-2.9 was the last expression of Legislative intent. Applying the rules regarding the specific controlling over the general, the last in time trumping previous inconsistent statutes and the doctrine of repeal by implication, the judge correctly ordered the Appellant to be sentenced as an adult. Based on the evidence presented, it is legally impossible for the Appellant to complete the treatment program and he must be sentenced or discharged when he reaches the age of 18 years, 5 months. This Court cannot order something to be done that the Legislature has prohibited. Our duty is to reconcile and interpret statutes, not legislate new statutes. As I have written in the past, The Federalist Papers presupposed this very type of issue and Alexander Hamilton wrote in Federalist No. 78:
It can be of no weight to say, that the courts on the pretence of a repugnancy, may substitute their own pleasure to the constitutional intentions of the legislature. This might as well happen in the case of two contradictory statutes; or it might as well happen in every adjudication upon any single statute. The courts must declare the sense of the law, and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body. (emphasis in the original)
¶ 10 I fear that is what is happening in this case. The majority has failed to recognize that the Legislature has not elected to craft the Youthful Offender Act in the form the majority wants and that is within the Legislature's constitutional prerogative. The role of this Court is to interpret and reconcile those statutes under the established rules of construction and not cherry pick some rules and disregard others. I would affirm the decision of the District Court and direct that the Appellant be sentenced as an adult.
LEWIS, Specially Concurring.
¶ 1 I concur in the Court's decision to reverse and remand this case for further proceedings to implement the legislative intent underlying the Youthful Offender Act. The Legislature is free to alter its intentions with respect to this Act, or abolish it altogether, but this Court must apply the Act according to the expressed intent.
¶ 2 This statute cannot be implemented in a vacuum; its provisions must be carried out according to the realities of court proceedings. As I said in C.C.S. v. State, No. J-2009-91 (Lewis, J., concurring):
It is the clear intention of the Legislature that otherwise qualified offenders who were seventeen (17) years old when the crime was committed be afforded an opportunity for rehabilitation. 10 O.S.Supp. 2008, § 7306-2.7a. The realities of this case show how the absolute cut-off age for youthful offender treatment, at age eighteen (18) years, five (5) months, actually defeats the intention to extend treatment efforts to offenders who are seventeen years old when the crime is committed. 10 O.S.Supp.2008, § 7306-2.9(B)(1)(a). Appellant was seventeen when the crime was committed, but attained the age of eighteen during the legal process in which his Youthful Offender status was being determined. Indeed, when this appeal has been decided, the case will return to District Court for a determination of whether Appellant is even guilty of the charged offense. Without some judicial remedy, the happenstance of Appellant's advancing age will have deprived him in the meanwhile of any opportunity for treatment as a youthful offender ... When an Appellant attains the age of eighteen (18) while proceedings to determine his youthful offender status are pending, this fact does not give the District Court a "good cause" to believe he *743 will not "reasonably complete" a plan of rehabilitation if certified as a youthful offender. The length of available rehabilitative programs seems to range from fifteen months to two years; but when otherwise qualified offenders are denied rehabilitative treatment solely because they are approaching the cut-off age of eighteen (18) years, five (5) months, the current implementation of the statute seems to frustrate, and conflict with, its underlying purpose (emphasis in original).
¶ 3 The Court has now acted to implement a remedy for this statutory conflict; our intention being to ensure that a qualified youthful offender's substantive opportunity for treatment will not be defeated by the mere passage of time during the prosecution. The Legislature may now judge for itself whether the remedy crafted by this Court is consistent with its policy.
NOTES
[1] Formerly 10 O.S.Supp.2008, § 7306-2.8 (renumbered eff. May 21, 2009).
[2] Formerly 10 O.S.Supp.2008, § 7306-2.9(B)(1)(a) (renumbered eff. May 21, 2009). This subsection provides that the treatment program of a youthful offender under the supervision of the Office of Juvenile Affairs "shall not exceed the youthful offender's attainment of eighteen (18) years of age and five (5) months."
[3] Formerly 10 O.S.Supp.2008, § 7306-2.2(B) (renumbered eff. May 21, 2009).
[4] Formerly 10 O.S.Supp.2008, § 7306-2.7a (renumbered eff. May 21, 2009).
[5] Estimates generally indicate treatment requires eighteen months to two years.
[1] The Youthful Offender Act, as codified in the Oklahoma Statutes, was renumbered as 10A O.S. § 2-5-2012-5-301 by Laws 2009 HB 2029, c. 234, § 188, eff. May 21, 2009. For clarity and simplicity, however, I refer to the pre-2009 numbering scheme.
[2] Title 10 O.S. § 7306-2.10 was renumbered as 10A O.S. § 2-5-210 by Laws 2009 HB 2029, c. 234, § 188, eff. May 21, 2009.
[3] Prior to its rescission in 2008, 10 O.S.Supp. 2007, § 7306-2.10(G) stated:

Under no circumstance shall any youthful offender or other person remain in, or be deemed to be in, the custody or under the supervision of the Department of Juvenile Justice beyond the date of his or her eighteenth birthday without a court-ordered extension of jurisdiction properly made and granted as provided by law, and in such cases no youthful offender shall remain in, or be deemed to be in, the custody or under the supervision of such Department for more than one-year intervals with the maximum term of jurisdictional extension terminating on or before the person's twentieth birthday; provided, however, at such time as a separate facility for youthful offenders has been established, constructed and is operational and a motion has been properly made and granted for a one-year renewal of a previous order for extension of jurisdiction, in such case only shall the maximum term of jurisdiction terminate on or before the date of the youthful offender's twenty-first birthday.
[4] Title 10 O.S. § 7306-2.9 was renumbered as 10A O.S. § 2-5-209 by Laws 2009 HB 2029, c. 234, § 188, eff. May 21, 2009.
[5] Before its amendment in 2008, 10 O.S. § 7306-2.9, contained no age limitations and stated only that:

After the hearing and consideration of the report of the presentence investigation, the court shall impose sentence as a youthful offender within the range prescribed by law for adult felony convictions except capital offenses and shall make one of the following dispositional orders regarding a youthful offender:
a. place the youthful offender under the supervision of the Office of Juvenile Affairs through its Department of Juvenile Justice, or
b. place the youthful offender in the custody of the Office of Juvenile Affairs.
10 O.S.Supp.2007, § 7306-2.9(B)(1).
[6] The majority only suggests, but does not expressly find, that the Legislature's 2008 enactment of the 18 year five month age limit conflicts and cannot be reconciled with its earlier enactment codified at 10 O.S.Supp.2006, § 7306-2.7a, which states in relevant parts that:

The Legislature finds that eligible seventeen-year-olds should have the opportunity to be processed as youthful offenders as provided by law and held accountable through the various provisions of the Youthful Offender Act ... No older youth should be deemed ineligible or denied consideration as a youthful offender who is otherwise lawfully eligible based upon the age of the youth being seventeen (17) years. To deny access to an otherwise eligible older youth without cause is to circumvent the original intent of the Legislature in creating the Youthful Offender Act.
(Emphasis added). The majority opinion correctly stops short of finding a conflict between the two sections. This is necessarily so, because it is obvious the two provisions do not conflict. Specifically, when the Legislature amended § 7306-2.9 to set the 18 year five month age limit, it obviously was defining a class of otherwise lawfully eligible older youth, an option it clearly reserved to itself in § 7306-2.7a. Nevertheless, the majority finds that "to deny [K.M.C.] access to youthful offender treatment would be to circumvent the original intent of the Legislature in creating the Youthful Offender Act." Op. at 738. Unfortunately, by basing its decision on the premise that all seventeen-year-olds must be sentenced as youthful offenders regardless of the length of their treatment programs because that was the "original intent" of the legislature as manifested in § 7306-2.7a, the majority fails to explain how a 2006 legislative action purporting to state the intent of a Legislature that preceded it can bind or restrict the actions of a later sitting Legislature. That is, the majority fails to explain how an act of the 2006 Legislature may purport to declare the intent of the 1994 Legislature in order to erect the 1994 Legislature's "original intent" as an inviolate barrier through which the 2008 Legislature may not reach. This is an absurd premise upon which to effect a judicial revision to a legislative enactment.
[7] See 20 O.S.2001, § 3001.1 ("no judgment shall be set aside ... unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right").
[1] Statutes numbers are those in existence at the time of the hearing on Appellant's sentencing motion.